**Debi ROSE, Appellant,**

v.

**GARLAND COMMUNITY HOSPITAL, Appellee.**

**No. 05–01–01813–CV.**

Court of Appeals of Texas, Dallas.

Aug. 20, 2002.

Lauri Michele Edsell Luxton, Jay C. English, English & Associates, P.C., Dallas, for appellant.

Joseph M. Gregory, Godwin Gruber, Yvette Jimenez Mabbun, Dallas, for appellee.

Before Justices LAGARDE, FITZGERALD, and RICHTER.

**OPINION**

Opinion By Justice LAGARDE.

Debi Rose appeals the trial court's order granting Garland Community Hospital's ("the Hospital") motion to dismiss for noncompliance with section 13.01 of article 4590i of the Medical Liability and Insurance Improvement Act ("the Act"). *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp.2002). Rose contends her claims against the Hospital are not governed by the Act. We agree. Accordingly, we reverse and remand.

## BACKGROUND

In 1998 and 1999, Rose underwent several cosmetic surgeries at the Hospital. James H. Fowler, M.D. ("the doctor"), an ear, nose, and throat specialist, performed the surgeries. Following the surgeries, Rose suffered painful and unsightly scarring around her face, breasts, abdomen, and other parts of her body. She sued the doctor for medical malpractice, alleging her injuries were proximately caused by his negligence and gross negligence. Rose later amended her petition to add the Hospital as a defendant. Rose alleged the Hospital was negligent by failing to (i) refer her to a qualified physician, (ii) perform tests and utilize equipment to prevent her from getting an infection, and (iii) act in accordance with the generally accepted standards of care required of physicians. The Hospital specially excepted to Rose's amended petition, generally denied Rose's allegations, and asserted certain specified affirmative defenses.[1]

After the trial court granted the Hospital's special exceptions, Rose filed a second amended petition in which she alleged the Hospital engaged in certain specified acts and omissions that constituted negligence, gross negligence, and malice. Specifically, Rose alleged the Hospital was negligent because it (i) allowed the doctor to perform and continue to perform surgery, (ii) entrusted the operating room and equipment to the doctor, (iii) recommended, granted, renewed, and continued the doctor's staff privileges, (iv) failed to deny or suspend the doctor's staff privileges and perform a reasonable investigation, and (v) failed to perform a reasonable investigation into the background, qualifications, history of surgical cases, and history of serious malpractice before recommending, granting, renewing, and continuing the doctor's staff privileges at a time when it knew or should have known the doctor was a reckless and careless physician and constituted a threat to his patients' safety.[2] Rose further alleged the Hospital was vicariously liable for the doctor's acts and omissions under the doctrines of agency, ostensible agency, and/or agency by estoppel.[3] In a separate section of her second amended petition, Rose alleged that she had complied with all conditions precedent to suit under the Act.

Even though Rose provided the Hospital with an expert report, and later a supplemental report, the Hospital moved to dismiss pursuant to section 13.01 of the Act on the ground that Rose had not made a good faith effort to comply with the Act's requirement that she timely file an expert report. In response, Rose argued her negligent credentialing/recredentialing claims against the Hospital were not governed by the Act and, in the alternative, if her claims were so governed, the expert reports were both timely and sufficient to constitute compliance with requirements of the Act. The trial court granted the Hospital's motion to dismiss and later granted Rose's motion to sever her negligent credentialing/recredentialing claims against the Hospital, assigning a separate cause number, 01–00287–B, to the severed cause of action now before us in this appeal.

1. In its original answer, the Hospital specially excepted to Rose's claims asserting they were defective because a hospital is prohibited by statute from practicing medicine and, therefore, cannot be held directly liable for acts and/or omissions that constitute the practice of medicine.

2. For ease of reference, we refer to these claims collectively as "negligent credentialing/recredentialing" claims.

3. At oral argument, Rose's counsel stated Rose is no longer pursuing these theories; accordingly, we do not address them in this appeal.

APPLICABILITY OF THE ACT

Under section 13.01(d) of the Act, within 180 days of filing a health care liability claim, a claimant must furnish each defendant with one or more expert reports accompanied by each expert's curriculum vitae or nonsuit the action. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d). If a claimant fails to comply with that section's requirements, upon defendant's motion, the trial court must dismiss the case with prejudice. *Id.* § 13.01(e). Therefore, if a claim against the defendant is a health care liability claim, absent compliance with section 13.01(d), the case is subject to dismissal. A careful reading of the Act, however, reveals that not all claims asserted against a health care provider are health care liability claims subject to requirements of the Act.

The ultimate issue we are called upon to decide in this case is whether Rose's negligent credentialing/recredentialing claims against the Hospital are health care liability claims as defined under section 1.03(a)(4) of the Act. For reasons that follow, we conclude they are not.

In her first issue, Rose contends her negligent credentialing/recredentialing claims against the Hospital are not governed by the Act. Specifically, Rose argues the Hospital's acts and omissions are separable from the medical services rendered to her because (i) a hospital may be independently liable for its own acts or omissions and (ii) a hospital's credentialing/recredentialing decisions are subject to the Texas Medical Practice Act. *See* TEX. OCC. CODE ANN. §§ 151.001–165.160 (Vernon Pamph.2002) (formerly article 4495b of the Texas Revised Civil Statutes); *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 509 (Tex.1997).

The Hospital disagrees, contending instead that Rose's negligent credentialing/recredentialing claims are governed by the Act because (i) her cause of action is based on a breach of a standard of care applicable to health care providers, (ii) expert testimony is required to establish that standard of care, and (iii) the Hospital's alleged acts and omissions were an inseparable part of the rendition of medical services to Rose.

Our review of questions regarding the applicability and statutory construction of the Act is *de novo. See Ponce v. El Paso Healthcare Sys., Ltd.,* 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied). When construing a statute, we must give effect to the Legislature's intent. *See* TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998); *Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994). The Legislature's intent is found in the plain and common meaning of the words and terms used in the statute, unless the language in the statute is ambiguous. *Sorokolit,* 889 S.W.2d at 241. In an unambiguous statute, we may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning. *See id.* We must construe terms in accordance with their statutory definitions. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998); *Whitworth v. Blumenthal,* 59 S.W.3d 393, 399 (Tex.App.-Dallas 2001, pet. dism'd by agr.). Under the Act, legal terms or words of art not defined in section 1.03 are given a meaning consistent with the common law. TEX.REV. CIV. STAT. ANN. art. 4590i, § 1.03(b).

The stated purpose of the Act is "to improve and modify the system by which health care liability claims are determined" in order to reduce the number and severity of health care liability claims and to decrease the costs of those claims. *Id.* § 1.02(b)(1), (2) (Vernon Supp.2002). The Legislature intended that this modification of the system "not unduly restrict a claimant's rights any more than necessary." *Id.* § 1.02(b)(3). Further, any modifications

to the liability laws are to those that relate to health care liability claims. *Id.* § 1.02(b)(7). The Legislature specifically defined what claims are subject to the Act: only health care liability claims. *Id.* § 1.03(a)(4).

In an effort to prevent frivolous health care liability claims, the Legislature amended the Act in 1993 by adding section 13.01, which requires the timely filing of an expert report. *See Bush v. Green Oaks Operator, Inc.,* 39 S.W.3d 669, 671 (Tex. App.-Dallas 2001, no pet.); *Neasbitt v. Warren,* 22 S.W.3d 107, 112 (Tex.App.-Fort Worth 2000, no pet.). The Legislature recognized there may be claims against health care providers that are not governed by the Act. *See Bush,* 39 S.W.3d at 671; *Rogers v. Crossroads Nursing Serv., Inc.,* 13 S.W.3d 417, 419 (Tex.App.-Corpus Christi 1999, no pet.).

"Health care liability claim" is statutorily defined as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4).

■ It is undisputed that the Hospital is a health care provider. *See id.* § 1.03(a)(3) (defining health care provider to mean, in relevant part, any corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a hospital). A hospital has an independent duty to "exercise reasonable care in the selection of its medical staff and to periodically monitor and review the medical staff's competence." *Mills v. Angel,* 995 S.W.2d 262, 268 (Tex.

App.-Texarkana 1999, no pet.). A hospital's direct liability arises from the negligent performance of this duty owed directly to the patient. *Id.*

Credentialing is a process in which the hospital's governing body or a medical peer review committee approved by the governing body grants a physician authorization to provide specific patient care and treatment services in the hospital within defined limits. RICHARD L. GRIFFITH & DEWEY W. JOHNSTON, TEXAS HOSPITAL LAW: ADMINISTRATION AND REGULATORY LAW § 3.1.1 (2d ed. Supp.2001); *see also* TEX. OCC.CODE ANN. § 151.002(8) (Vernon Pamph.2002).

■ To determine whether Rose's negligent credentialing/recredentialing claims are health care liability claims, we look beyond the pleadings to the underlying nature of the claims. *See Bush,* 39 S.W.3d at 672 (citing *Sorokolit,* 889 S.W.2d at 242). The test is whether the claim requires a determination of whether a health care provider failed to meet the applicable standard of medical care. *Sorokolit,* 889 S.W.2d at 242. Further, for Rose's negligent credentialing/recredentialing claims to come within the scope of the Act, the acts or omissions that form the factual basis for the claims must be an inseparable part of the rendition of her medical services. *See Bush,* 39 S.W.3d at 672 (citing *Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995) (per curiam)).

"Treatment" is not defined in the Act. In *Lection v. Dyll,* we defined "treatment" as "the action or manner of treating a patient medically or surgically." 65 S.W.3d 696, 705 n. 5 (Tex.App.-Dallas 2001, pet. denied) (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 2435 (1981)). "Treat" means "to care for (as a patient or part of the body) medically or surgically." *Id.* Rose's negligent credentialing/recredentialing

claims do not constitute a cause of action for treatment or lack of treatment by the Hospital. The remaining question, then, is whether Rose's negligent credentialing/re-credentialing claims allege a cause of action that the Hospital departed from accepted standards of medical care, health care, or safety.

"Medical care" is defined as "any act defined as *practicing medicine* ... performed or furnished, or which should have been performed, by one licensed to practice medicine in Texas for, to, or on behalf of a patient during the patient's care, treatment, or confinement." TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(6) (emphasis added). Under the Texas Medical Practice Act, a hospital cannot practice medicine. TEX. OCC.CODE ANN. § 151.002(a)(11), (13) (formerly article 4495b, section 1.03(a) of the Texas Revised Civil Statutes); *see also Clements v. Conard*, 21 S.W.3d 514, 522 (Tex.App.-Amarillo 2000, pet. denied). Consequently, Rose has not alleged a cause of action against the Hospital claiming it departed from accepted standards of *medical care.*

"Health care" is defined as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient *during the patient's medical care, treatment, or confinement.*" TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(2) (emphasis added). Thus, the Hospital's alleged acts or omissions must have been performed or furnished or should have been performed or furnished for, to, or on behalf of Rose *during* her medical care, treatment, or confinement. In other words, the complained-of acts or omissions must be an inseparable part of the rendition of medical services. The initial credentialing decision is made when the physician applies for membership on the medical staff and privilege delineation.

GRIFFITH, *supra*, § 3.1.1. Periodically, the hospital evaluates the physician's competence and renews staff privileges. *Id.* Consequently, the credentialing/recredentialing process is not performed *during* a patient's medical care, treatment, or confinement. The credentialing/recredentialing process occurs separate from a patient's medical care and *before* a physician can treat a patient in the hospital; otherwise, the physician would not be allowed to either admit or treat the patient. Thus, Rose has not alleged a cause of action against the Hospital claiming it departed from accepted standards of *health care.*

"Safety" is not defined within section 1.03 of the Act. Assuming *arguendo* that negligent credentialing could be a safety issue, a hospital's credentialing/recredentialing actions do not occur during a patient's medical care, treatment, or confinement. In the previous definitions, the Legislature expressly stated that only those acts performed or furnished to, for, or on behalf of the patient during the patient's medical care, treatment, or confinement are to be considered when determining whether a health care provider has departed from accepted standards of care. The Legislature must have intended acts related to safety also to have occurred during a patient's medical care, treatment, or confinement. Rose, therefore, has not alleged a cause of action against the Hospital claiming it departed from accepted standards of *safety.*

In summary, Rose's negligent credentialing/recredentialing claims against the Hospital are not health care liability claims because the Hospital's alleged acts or omissions that form the factual basis of those claims cannot be considered medical care or health care, as defined in the Act, nor can they be considered safety. By including the phrase "during a patient's medical care, treatment, or confinement,"

the Legislature intended to limit the scope of the Act to claims in which the departure from accepted standards of care occur while a patient was under a physician's care, receiving treatment, or confined within a hospital. None of the Hospital's alleged acts or omissions was an inseparable part of the medical services provided to Rose. Ultimately, Rose will have to link the Hospital's acts or omissions with the doctor's acts or omissions to prove causation. However, causation is a consequence of an act or omission and not an act or omission itself; thus, causation does not operate to make the Hospital's acts or omissions an inseparable part of the rendition of medical services. Rose's negligent credentialing/recredentialing cause of action will ultimately require a determination of whether the Hospital breached an applicable standard of care; however, this factor alone does not bring the cause of action within the scope of the Act. For Rose's cause of action to be governed by the Act, the Hospital must have breached the accepted standards of medical or health care, as defined in the Act, or accepted standards of safety. Consequently, as a matter of law, we conclude Rose's negligent credentialing/recredentialing claims against the Hospital are not governed by the Act.[4] Thus, Rose was not required to comply with section 13.01 of the Act. It follows, then, the trial court's dismissal for noncompliance with requirements of the Act was reversible error. We resolve the first issue in Rose's favor. Consequently, we need not address Rose's remaining issues concerning compliance with section 13.01 of the Act and extension of time for filing expert reports.

We reverse the trial court's order and remand the cause for further proceedings consistent with this opinion.

---

**4.** We recognize a cause of action for negligent credentialing/recredentialing is subject to the immunity provision of the Texas Medical Practice Act. *See* Tex. Occ.Code Ann. § 160.010 (Vernon Pamph.2002); *Agbor,* 952 S.W.2d at 509. In *Agbor,* the Texas Supreme Court held that a threshold standard of malicious conduct is required to state a cause of action against a hospital for its credentialing actions; otherwise, a hospital would be immune from any civil liability arising from its actions. *Agbor,* 952 S.W.2d at 509. Thus, a patient is faced with the difficult task of pleading and proving malice to defeat a hospital's immunity on a negligent credentialing claim.