**Debi ROSE, Appellant,**

v.

**GARLAND COMMUNITY HOSPITAL, Appellee.**

**No. 05–01–01813–CV.**

Court of Appeals of Texas, Dallas.

July 27, 2005.

Lauri Michele Edsell Luxton and Jay C. English, English & Associates, P.C., Dallas, for Appellant.

P. Michael Jung and Christine D. Roseveare, Strasburger & Price, L.L.P., Dallas, for Appellee.

Before Justices FITZGERALD, RICHTER, and LAGARDE.[1]

## OPINION ON REMAND

Opinion by Justice SUE LAGARDE (Retired).

In our original opinion in this case,[2] we held that Debi Rose's claim against Garland Community Hospital for negligent credentialing was not a health care liability claim governed by the Medical Liability and Insurance Improvement Act (MLI-IA).[3] On November 5, 2004, the Texas Supreme Court held that "a claim for negligent credentialing is a claim against a health care provider for a departure from an accepted standard of health care, and as such it is a health care liability claim that carries all the statutory and common law burdens associated therewith." *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 547 (Tex.2004). The supreme court reversed our judgment and remanded the case to us for further proceedings. *Id.*

On remand, the narrow issue we must decide is whether Rose's expert report constituted a good faith effort to comply with the MLIIA. *See id.* at 547. Supplemental briefing on remand was permitted. Having reviewed Rose's expert report, we hold the trial court did not abuse its discretion in concluding the report did not constitute a good faith effort to comply with the statute. Consequently, we affirm the trial court's order dismissing Rose's case against the hospital.

### Background

The facts of this case are set out in our original opinion and in the supreme court's opinion. Accordingly, we will not repeat them, except as necessary to our analysis.

Two separate affidavits were before the trial court and are before this Court: one

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

2. *Rose v. Garland Cmty. Hosp.,* 87 S.W.3d 188 (Tex.App.-Dallas 2002), *rev'd,* 156 S.W.3d 541 (Tex.2004).

3. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985–87. While this case was on appeal, the Legislature enacted House Bill 4 ("H.B.4"), which repealed article 4590i and governs all health care liability claims filed on or after Septem-

ber 1, 2003. *See Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 542 n. 2 (Tex.2004) (citing Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 884 (codified at TEX. CIV. PRAC & REM.CODE ANN. §§ 74.001–.507 (Vernon 2005))). However, former article 4590i (designated herein as MLIIA) governs this case. *Rose,* 156 S.W.3d at 542 n. 2. Therefore, for purposes of simplicity, any citation to the former statute will be to TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01.

dated April 10, 2001 and one dated July 10, 2001. Both affidavits were by Robert A. Ersek, M.D. The trial court considered both affidavits. Likewise, we consider both affidavits and will sometimes refer to them together as "Rose's expert report."

The April 10, 2001 report speaks only to medical treatment and not to negligent credentialing. The July 10, 2001 report states, in relevant part:

I have reviewed the treatment records of Debi Rose from James H. Fowler and the Cosmetic Surgery Center of North Dallas beginning on October 30, 1998 and ending on July 14, 1999. As stated in my April 10, 2001 report, a hospital/patient relationship existed between Garland Community Hospital and Debi Rose. The standard of care requires hospitals to do the following:

1. vigorously investigate complaints and allegations of medical negligence by patients against physicians who have privileges at the hospital;

2. ascertain a physician's qualifications and ensure that a physician has the proper training before permitting him/her to perform surgical procedures;

3. to limit, curtail or restrict a physician's privileges where multiple complaints and/or allegations of medical negligence are lodged against a physician or to supervise that physician during surgery.

I have concluded that Garland Community Hospital breached the standard of care in the following areas:

1. Garland Community Hospital knew or should have known of multiple prior incidents involving poor surgical skills on the part of Dr. James H. Fowler and took no action to prevent or restrict Dr. Fowler's surgical privileges;

2. Dr. Fowler, as an Ear, Nose and Throat specialist, is not board certified in plastic surgery and should not have been permitted to perform plastic surgery. There was a failure of credentialing on the part of Garland Community Hospital for permitting Dr. Fowler to perform plastic surgery.

3. To the extent that the nurses and surgical staff participated and acquies[c]ed in the performance of plastic surgery by Dr. Fowler, Garland Community Hospital incurred liability for same.

The trial court granted the hospital's motion to dismiss, pursuant to section 13.01 of the MLIIA, on the ground Rose had not made a good faith effort to comply with the MLIIA's requirement that she timely file an expert report. *Rose,* 87 S.W.3d at 189. Rose appeals from that dismissal.

*Standard of Review and Applicable Law*

The issue for the trial court was whether Rose's expert report represents a good-faith effort to comply with the statutory definition of an expert report. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 51 (Tex.2002) (citing TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001)). In its order of dismissal, the trial court found that "[n]either the April 10 nor the July 10, 2001 report states the causal relationship, if any, between the alleged failure of [the hospital] in connection with its credentialing activities and the injury, harm or damages claimed." The trial court also found, even considering both the April 10 and July 10, 2001 affidavits together, the affidavits do not satisfy the requirements of article 4590i.

We review a trial court's order dismissing a claim for failure to comply with section 13.01(d)'s expert-report requirements under an abuse of discretion standard. *Id.* (citing *Palacios,* 46 S.W.3d at 878). And we review a trial court's decision about whether a report constitutes a good-faith effort to comply with the MLIIA under an abuse of discretion standard. *See id.* (citing *Palacios,* 46 S.W.3d at 878). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Id.* (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985)). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court. *See id.* (citing *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41 (Tex. 1989)).

A negligent credentialing claim involves a specialized standard of care. *Rose,* 156 S.W.3d at 546 (citing *Mills v. Angel,* 995 S.W.2d 262, 275 (Tex.App.-Texarkana 1999, no pet.)). Therefore, expert testimony is required to establish liability because procedures ordinarily used by a hospital to evaluate staff privileges are not within the realm of a juror's ordinary experience. *See Mills,* 995 S.W.2d at 275. Medical experts are not necessarily credentialing experts. In fact, a credentialing expert need not be a physician but may be a witness who is familiar with the standard of care for credentialing because of training and experience. *See id.* (citing *Lopez v. Cent. Plains Reg'l Hosp.,* 859 S.W.2d 600, 603–04 (Tex.App.-Amarillo 1993, no writ), *disapproved on other grounds by St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 509 n. 1 (Tex.1997)).

The relevant statute defines an expert report as "a written report by an expert that provides a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered ... failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Palacios,* 46 S.W.3d at 877 (quoting Tex. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6)). Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document. *See id.* at 878.[4] A trial court should look no further than the report in conducting a section 13.01(*l*) inquiry. *Id.*

A report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *Id.* at 878–79 (citing *Hart v. Wright,* 16 S.W.3d 872, 877 (Tex.App.-Fort Worth 2000, pet. denied)). To constitute a good-faith effort, a report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude the claims have merit. *Wright,* 79 S.W.3d at 52 (citing *Palacios,* 46 S.W.3d at 879). A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. *Palacios,* 46 S.W.3d at 879. The expert must explain the basis of his statements to link his conclusions to the facts. *Wright,* 79 S.W.3d at 52 (quoting *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999)).

*Analysis*

Nowhere in either affidavit is there a fair summary of the expert's opin-

---

**4.** Technically, here, of course, there are "eight corners," inasmuch as we have two separate affidavits, which, read together, constitute Rose's expert report.

ions regarding the causal relationship between the hospital's failure to meet the specialized standard of care for credentialing and the injury, harm, or damages claimed. *See Palacios,* 46 S.W.3d at 877. In relevant part, the April 10, 2001 affidavit contains the following about causation:

> The failure to utilize the appropriate procedures as outlined above constitutes negligence and gross negligence on the part of Dr. James H. Fowler and on the part of the facility where the treatment took place, Garland Community Hospital. Said failures were the proximate cause of Ms. Rose's deformed abdomen, overly large breast augmentation, irregularities in her hips, thighs, arms, and shoulders, as well as the staph infection.

The causation referenced above refers to the causal link between the alleged negligent medical treatment and Rose's injuries—it does not go to the causal link between the alleged negligent credentialing of Dr. Fowler by the hospital and Rose's injuries. And the July 10, 2001 affidavit contains no language about such causation. Neither affidavit states there were multiple previous complaints or allegations by patients of medical negligence against Dr. Fowler, which, if they had been investigated, would have been found to be meritorious and would have led to restriction of Dr. Fowler's privileges. Perhaps the complaints and allegations would have been unsustained as lacking merit. We may not infer causation. *See Wright,* 79 S.W.3d at 53 (stating that the report must include the required information within its four corners).

■ Because Rose's expert report lacks information linking the "expert's" conclusion of negligent credentialing to the hospital's alleged breach or to Rose's damages, the trial court could have reasonably determined the report was conclusory. *See id.* (citing *Palacios,* 46 S.W.3d at 880;

*Earle,* 998 S.W.2d at 890). A conclusory report does not meet the MLIIA's requirements because it does not satisfy the *Palacios* test. *Id.* (citing *Palacios,* 46 S.W.3d at 879). When an expert report's conclusory statements do not put the defendant or the trial court on notice of the complained-of conduct, section 13.01(*l*) affords the trial court no discretion but to conclude the report does not represent a good-faith effort to provide a fair summary of the specialized credentialing standard of care, how it was breached, and how it caused plaintiff's injuries, as section 13.01(r)(6) requires. *See Palacios,* 46 S.W.3d at 880. Accordingly, we hold the trial court did not abuse its discretion in concluding Rose's expert report did not represent a good-faith effort to meet the MLIIA's requirements. *See Wright,* 79 S.W.3d at 53.

And, just as in *Palacios,* because the statutory 180–day time period had passed when the trial court here made that determination, section 13.01(e) required the court to dismiss with prejudice Rose's claims against the hospital. *See Palacios,* 46 S.W.3d at 880 (citing Tex.Rev.Civ. Stat. Ann. art 4590i, § 13.01(e)). Consequently, the trial court did not abuse its discretion in dismissing Rose's claims against the hospital. We resolve Rose's issue against her.

We affirm the trial court's order.

FITZGERALD, J. dissenting.

Dissenting Opinion by Justice FITZGERALD.

On remand, the issue before us is whether Rose's expert reports constituted a good faith effort to comply with the Medical Liability and Insurance Improvement Act ("MLIIA"). *See Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 546 (Tex.2004). The parties narrowed the issue by focusing

our attention upon the part of the definition of expert report that requires the written report(s) to provide a fair summary of the expert's opinions regarding "the causal relationship between [the failure to meet the applicable standards of care] and the injury" (hereafter the "causal relationship element"). *See* TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01(r)(6).[1]

I part company with the majority because of the approach used to analyze the issue. The majority searches the expert reports to determine if they state the hospital's credentialing process caused Rose's injuries.[2] The majority finds no such language. The majority acknowledges that the expert reports do contain language referring to the causal link between the medical treatment and Rose's injuries.[3]

The supreme court, on the other hand, dictates we recognize the inherently inseparable nature of the credentialing process and medical treatment. We, therefore, must review the expert reports to determine if they state that the hospital's credentialing process, in conjunction with the medical treatment given Rose, caused Rose's injuries. The specific issue, then, is whether the expert reports sufficiently state the causal relationship between (1) the hospital's alleged negligent credentialing of Dr. Fowler *and* Dr. Fowler's alleged negligent treatment of Rose, and (2) Rose's injuries. They do.

*Rose* stressed that the hospital's credentialing process was "inseparable" from the medical services provided. The supreme court emphasized that a hospital's credentialing process is "an inseparable part of the medical services" a patient receives, that a hospital's primary function is to provide a place in which doctors can provide health care services, and that the quality of the hospital's medical staff is "intimately connected with patient care." In short, "a hospital's credentialing of doc-

1. The hospital argued that "any act of negligence that does nothing more than put a person in a particular place at a particular time is too remote to constitute legal causation." The hospital thus recognized the significance of the credentialing process when it conceded that this act gave Dr. Fowler the opportunity to be in the operating room to operate upon Rose. The hospital, however, minimized the conduct by arguing it was "too remote." The hospital primarily relied upon *Gonzalez v. El Paso Hosp. Dist.*, 68 S.W.3d 712 (Tex.App.-El Paso 2001, no pet.), which sets forth the applicable rules. The facts, however, involve health care providers who allegedly failed to respond to certain warning signs that occurred prior to the birth of a baby who died shortly after birth. The case does not address negligent credentialing and, therefore, is of marginal value. Rose countered that the reports adequately addressed causation as "the surgery could not have been botched if [Dr.] Fowler had not been credentialed by the Hospital."

2. The majority quotes six paragraphs of the second expert report pertaining to the hospital's alleged negligent credentialing and a single paragraph of the first report pertaining to Dr. Fowler's alleged negligent medical treatment. I adopt these quoted segments to avoid needless repetition. The majority agrees the single paragraph relating to Dr. Fowler's alleged negligent medical treatment and Rose's injuries does set forth the causal relationship element, but only between Dr. Fowler's medical treatment and Rose's injuries. The majority stresses that neither report sets out the causal relationship element between the Hospital's alleged negligent credentialing and Rose's injuries and, therefore, the expert reports do not constitute a good faith effort to comply with the MLIIA.

3. The relevant part of the report states:

The failure to utilize the appropriate procedures as outlined above constitutes negligence and gross negligence on the part of Dr. James H. Fowler and on the part of the facility where the treatment took place, Garland Community Hospital. Said failures were the proximate cause of Ms. Rose's deformed abdomen, overly large breast augmentation, irregularities in her hips, thighs, arms, and shoulders, as well as the staph infection.

tors is necessary to that core function and is, therefore, an inseparable part of the health care rendered to patients." *Rose,* 156 S.W.3d at 545.

The supreme court observed in *Rose* that our prior analysis of the hospital's credentialing function was unrealistic and flawed. Our analysis on remand should, therefore, be very mindful of the supreme court's compelling evaluation of the credentialing function of a hospital. The hospital's credentialing decision enables the only doctor to access the operating room and medically treat the patient. It is patently obvious that negligent credentialing, an "enabling" act, without more, cannot and will not, per se, cause any injury to any patient. A negligent credentialing claim is illusory absent negligent medical treatment. Under these circumstances, the majority's analysis of the causal relationship element—limited strictly to the negligent credentialing claim—is unrealistic and inconsistent with *Rose.*

The supreme court honed in on this essential point in more eloquent terms when it wrote:

> When a plaintiff's credentialing complaint centers on the quality of the doctor's treatment, as it does here, the hospital's alleged acts or omissions in credentialing are inextricably intertwined with the patient's medical treatment and the hospital's provision of health care. Although neither the Hospital as an entity nor the credentialing board actually performed the surgeries on Rose, a doctor lacking credentials

could not have performed surgery in that hospital. Likewise, Rose's negligent credentialing claim derives from Dr. Fowler's alleged negligent treatment. Indeed, without negligent treatment, a negligent credentialing claim could not exist.

*Id.* at 546.

Thus, the supreme court recognized the intertwined relationship of these claims by saying the credentialing claim against the hospital "derives from" the malpractice claim, and the two are "inseparable." *Id.* When the two claims—negligent credentialing and negligent medical treatment— are considered together in this case, those segments of the expert reports referenced in detail by the majority sufficiently state the causal relationship element. This approach effectuates the core analysis of *Rose.*

The report qualifies as a good faith effort to provide a fair summary of the expert's opinions. *See* art. 4590i, § 13.01(*l*), (r)(6). The report meets both requirements of the *Palacios* test: it describes the elements of the intertwined offenses with sufficient specificity to inform the hospital of the conduct Rose has called into question, and it provides a basis for the trial court to conclude the claims have merit. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 876–77 (Tex.2001).[4] The trial court's order dismissing Rose's credentialing claims under the MLIIA should be re-

---

4. In *Palacios,* the supreme court concluded the expert report failed because it did not adequately describe the relevant standard of care. As a result, neither the trial court nor the defendant could determine from the report what the expert believed the defendant was required to do differently. 46 S.W.3d at 880 ("Neither the trial court nor American Transitional would be able to determine from

this conclusory statement if [the expert] believes that the standard of care required American Transitional to have monitored Palacios more closely, restrained him more securely, or done something else entirely."). The majority has not identified any similar difficulty in this case on the issue of causation.

versed. Accordingly, I respectfully dissent from the majority's opinion.