NUMBER 13-18-00638-CV


# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROSALINDA SOLIZ,                                                    Appellant,

v.

MCALLEN HOSPITALS, L.P.,                                            Appellee.

On appeal from the 206th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Perkes**
**Memorandum Opinion by Justice Longoria**

Appellant Rosalinda Soliz was injured during a hysterectomy at the McAllen

Medical Center (MMC). After filing suit against appellee McAllen Hospitals, L.P. (the

Hospital), Soliz filed an expert report regarding the Hospital's role in causing her injury.

The Hospital objected to the expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 74.351. The trial court sustained the Hospital's objections. In her sole issue on appeal,

Soliz argues that the trial court abused its discretion in sustaining the Hospital's objections to her expert report. We affirm.

## I. Background

On August 2, 2016, Maria Rodriguez De Lima (Rodriguez), M.D. performed a surgical hysterectomy on Soliz at the MMC. During the procedure, Soliz sustained several injuries, including multiple bowel and bladder lacerations and a severed left ureter. On December 4, 2017, Soliz filed suit against Rodriguez. On January 10, 2018, Soliz filed an expert report by Jeffrey Wilkinson, M.D. that addressed Rodriguez's negligence in causing Soliz's injuries. No objections were made to Wilkinson's report.

On April 23, 2018, Soliz joined the Hospital as a defendant to the suit, alleging that Rodriguez's negligent medical care would not have occurred if not for the Hospital's negligence in the selection and retention of physicians who are granted staff privileges. On August 1, 2018, Soliz filed an expert report written by Richard Bays, an expert in "complex healthcare and development projects." His report addressed the Hospital's negligence in credentialing Rodriguez at the MMC and how that negligence caused Soliz's injuries. On August 21, 2018, the Hospital objected to Bays's expert report, alleging that the report was "impermissibly vague and conclusory on causation." *See id.* § 74.351(*l*). On November 13, 2018, the trial court signed an order sustaining the Hospital's objections to Bays's report. This interlocutory appeal followed. *See id.* § 51.014(a)(10); *Lewis v. Funderburk*, 253 S.W.3d 204, 207 (Tex. 2008) (observing that § 51.014(a)(10) permits immediate interlocutory appeal if trial court sustains a challenge to the adequacy of the expert report under § 74.351(*l*)).

## II. Chapter 74 Expert Report

Soliz argues on appeal that the trial court erred in sustaining the Hospital's objections to Bays's expert report.

## A. Standard of Review and Applicable Law

We review a trial court's ruling on the sufficiency of an expert's report for abuse of discretion. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006). "The trial court abuses its discretion if it acts unreasonably or arbitrarily or without reference to any guiding rules or principles." *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex. 2003); *see Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910–11 (Tex. 2017) (same). The court of appeals cannot reverse a decision committed to the trial court's discretion if the court of appeals simply disagrees with the trial court's judgment. *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41–42 (Tex. 1989) (orig. proceeding). The trial court's decision must result in a "clear and prejudicial error" to be reversible. *Id.*

The Texas Medical Liability Act (the Act), codified in Chapter 74 of the Texas Civil Practice and Remedies Code, governs the process of serving expert reports in health care liability suits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. Under the Act, an interlocutory appeal is permissible in just two circumstances.

> First, an immediate appeal can be taken if a trial court *denies* relief sought under subpart (b). Second, an immediate appeal is allowed when a trial court *grants* relief under subpart (*l*). . . . [S]ubpart (b) provides for dismissal and fees. Subpart (*l*) provides for challenges to inadequate reports, but says nothing about dismissal or fees. That is because some challenges—specifically those filed within the first 120 days—*cannot* seek dismissal or fees until the 120–day window has closed.

*Lewis*, 253 S.W.3d at 207. And according to subpart (*l*), a court should only grant a motion challenging the sufficiency of an expert report "if it appears to the court, after hearing, that

3

the report does not represent an objective good faith effort to comply with the definition of an expert report." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*).

The Act states that the plaintiff in a medical liability suit has 120 days to serve each defendant with an expert report. *Id.* § 74.351(a). An expert report is defined in the Act as:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6); *see Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) ("A valid expert report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet that standard; and it must establish the causal relationship between the failure and the harm alleged."). To qualify as an objective good faith effort, the report must provide enough information regarding the expert's opinions on the three statutory elements of standard of care, breach, and causation to fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff questions, and (2) provide a basis for the trial court to conclude that the plaintiff's claims have merit. *See THN Physicians Ass'n v. Tiscareno*, 495 S.W.3d 914, 919 (Tex. App.—El Paso 2016, no pet.); *Clapp v. Perez*, 394 S.W.3d 254, 258 (Tex. App.—El Paso 2012, no pet.).

"To satisfy the required element of causation under chapter 74, an expert report must include a fair summary of the expert's opinion regarding the causal relationship between the breach of the standard of care and the injury, harm, or damages claimed." *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 496 (Tex. App.—Dallas 2010, no pet.). The Texas Supreme Court has elaborated:

4

> [W]ith respect to causation, the court's role is to determine whether the expert has explained how the negligent conduct caused the injury. Whether this explanation is believable should be litigated at a later stage of the proceedings. The ultimate evidentiary value of the opinions proffered [in an expert report] is a matter to be determined at summary judgment and beyond.

*Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 226 (Tex. 2018). In addition, a trial court's disagreement with an expert's opinion "does not render the expert report conclusory." *Id.*

Section 74.351(a) states that defendants have twenty-one days upon receipt of the report to object to any deficiencies; failure to object results in waiver of all objections to the expert report. *Id.* § 74.351(a)(1). Under § 74.351(b), if no report is filed, the trial court shall enter an order dismissing the suit and awarding the affected physician or health care defendant with attorney's fees and costs. *Id.* § 74.351(b). However, "if an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient," the court may grant a thirty-day extension for the plaintiff to cure the deficiencies. *Id.* § 74.351(c). As the Texas Supreme Court has noted, the Act's purpose is to strike a delicate balance between deterring frivolous lawsuits without needlessly disposing of meritorious claims. *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008). In general, trial courts should "err on the side of granting claimants' extensions." *Samlowski v. Wooten*, 332 S.W.3d 404, 411 (Tex. 2011). As long as there is "at least one viable liability theory, as evidenced by an expert report," the claim is not frivolous and should proceed forward. *See Potts*, 392 S.W.3d at 627.

"[A]lthough Texas may not formally recognize an independent, common law, cause of action for negligent credentialing, such allegations are recognized by Texas courts and by statutory authority as actionable theories of liability in medical negligence cases."

5

*Moreno v. Quintana*, 324 S.W.3d 124, 134 (Tex. App.—El Paso 2010, pet. denied); *see Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 220 (Tex. 2005); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 546 (Tex. 2004). Hospitals have a duty to patients to exercise reasonable care in the "selection of its medical staff and in granting privileges to them." *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 508 (Tex. 1997).

> One of a hospital's primary functions is to provide a place in which doctors dispense health care services. The quality of a health care provider's medical staff is intimately connected with patient care. A hospital's credentialing of doctors is necessary to that core function and is, therefore, an inseparable part of the health care rendered to patients. . . . When a plaintiff's credentialing complaint centers on the quality of the doctor's treatment . . . the hospital's alleged acts or omissions in credentialing are inextricably intertwined with the patient's medical treatment and the hospital's provision of health care.

*Garland*, 156 S.W.3d at 545–46. In making a claim for negligent credentialing, the plaintiff must show how the defendant's failure to meet the specialized standard of care for credentialing proximately caused the complained of injury. *See Rose v. Garland Cmty. Hosp.*, 168 S.W.3d 352, 356–57 (Tex. App.—Dallas 2005, no pet.); *see also Johnston v. Christus Spohn Health Sys. Corp.*, No. 13-14-00418-CV, 2015 WL 10574287, at *5 (Tex. App.—Corpus Christi–Edinburg Mar. 31, 2015, no pet.) (mem. op.). In addition, a hospital will not be held liable for improperly credentialing a physician unless the hospital acts with malice. *See Moreno*, 324 S.W.3d at 134.

## B. Discussion

This is an appeal of a challenge to an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(10); 74.351(*l*). Soliz argues that Bays's expert report clearly constituted an objective good faith effort to provide a fair summary of the applicable standard of care, the Hospital's breach of that standard, and how that breach caused

harm to Soliz. Thus, Soliz asserts that the trial court erred in sustaining the Hospital's challenge to the expert report. The Hospital did not challenge Bays's description of the applicable standard of care or Bays's allegation of the Hospital's breach of said standard. Rather, the Hospital mainly attacked the causation element of the expert report. The Hospital argues that Bays's expert report "failed to link the alleged negligent credentialing to [Soliz's] damages."

Bays's expert report consisted of a series of questions and answers, including:

Question 1:

> In credentialing [Dr. Rodriguez], did [the Hospital] act as a reasonably prudent hospital would have acted under the same or similar circumstances?

Answer:

> No. [The Hospital] did not act as a reasonably prudent hospital would have acted in credentialing Dr. Rodriguez, because [the Hospital] did not reasonably establish a professional liability insurance coverage (PLIC) requirement for such credentialing, and therefore did not reasonably apply a reasonably established PLIC requirement.

> . . .

> Based upon the things produced to me to date, it appears [the Hospital] required that Dr. Rodriguez have PLIC with a minimum liability limit per occurrence of $100,000. . . . Because Dr. Rodriguez is an OB-GYN, such PLIC is not reasonable. In particular, $100,000 is substantially less than the mean cost of resolving malpractice claims against OB-GYN's.

> The study report entitled "Malpractice Risk According to Physician Specialty" . . . involved a review of data from 1991 through 2005. The data included the PLIC claim histories of more than 41,000 physicians, whose PLIC insurer was a large national PLIC insurer. The report indicated that the mean claim settlement amount in 2008 dollars for the OB-GYN specialty was between $250,000 and $400,000. The report also indicated that OB-GYNs accounted for the most claim settlement payments of $1,000,000 or more among the 24 medical specialties considered. The report also indicated that 74% of OB-YGN's [sic] are expected to receive a malpractice claim, by the time they reach the age of 45. Similarly, Capson Physicians

7

Ins. Co. (Capson), which provides PLIC in 27 states, reports that an average indemnity payment of $375,000 was associated with malpractice claims against OB-GYNs in 2017. Capson also reports that in 2017 OB-GYNs had the highest claim payment rate (greater than 38%) of any medical specialty.

. . .

In recent years, PLIC insurers have modified their offering to insured physicians, to lower premiums and garner greater market share. One increasingly popular modification of such kind, is making the limit of liability an amount which is reduced by costs of defense. . . . Given the high costs of legal services, such an "eroding policy" might provide much less than $100,000, perhaps nothing, with which to pay a malpractice claimant by the time of settlement or judgment. Therefore, in establishing an amount of PLIC a medical staff member must maintain, a hospital should either expressly disapprove the use of "eroding policies" to satisfy such a requirement, or adopt a procedure for evaluating "eroding policies" and making appropriate adjustments to the amounts of PLIC required. [The Hospital] did not act as a reasonably prudent hospital would act in establishing the PLIC requirement for Dr. Rodriguez, because [the Hospital] neither (1) expressly disapproved the use of "eroding policies" to satisfy such requirement, nor (2) adopted a procedure for evaluating "eroding policies" and making appropriate adjustments to the amounts of PLIC required.

. . .

[The Hospital] did not act as a reasonably prudent hospital would act in establishing the PLIC requirement for Dr. Rodriguez, because [the Hospital] not only used a PLIC requirement for Dr. Rodriguez that was well below the mean claim settlement amount for OB-GYNs, but [the Hospital] ostensibly made no adjustments to such requirement on account risk factors [sic] such as length of time in practice, prior malpractice claims history, and percentage of higher-risk procedures comprising Dr. Rodriguez's medical practice.

. . .

Question 2:

If [the Hospital] failed properly to credential Dr. Rodriguez, did such failure cause or contribute to cause harm to [Soliz]?

Answer:

8

Yes. Based upon Dr. Wilkinson's opinions, to which I defer, it is my understanding that Dr. Rodriguez did not provide [Soliz] with care and treatment satisfying pertinent OB-GYN standards of care, and Dr. Rodriguez's failure to do so caused [Soliz's] damages. In my opinion, it is reasonable to conclude that [the Hospital's] failure to properly credential Dr. Rodriguez probably contributed to sub-standard care being provided to [Soliz] by facilitating Dr. Rodriguez's provision of care and treatment to [Soliz] in place of a competent better credentialed OB-GYN.

Question 3:

If you conclude that [the Hospital] failed properly to credential Dr. Rodriguez, was such failure malice . . . ?

Answer:

Yes. The statistics that I reference above . . . are statistics which were in the public domain and could only have gone unappreciated by [the Hospital] through intentional disregard of the relevant published literature. Therefore, in my opinion, [the Hospital's] application of the $100,000 PLIC requirement in Dr. Rodriguez's credentialing, and [the Hospital's] failure to adjust such requirement in any of the ways discussed above, indicate malice in [the Hospital's] negligent credentialing of Dr. Rodriguez.

The Hospital argues that Bays's expert report does not constitute a good faith effort to comply with Chapter 74 because it fails to adequately explain a link between the Hospital's alleged negligent credentialing and Soliz's injuries. We first note that Soliz's claim is somewhat unusual. We have already established that negligent credentialing is generally recognized as a viable claim in Texas. *See Moreno*, 324 S.W.3d at 134; *Rose*, 168 S.W.3d at 356. However, in most negligent credentialing cases, the plaintiff calls into question the medical malpractice history of a doctor and alleges that the health care facility was thereby negligent in allowing such a doctor to practice medicine in their facility. *See Moreno*, 324 S.W.3d at 134; *Rose*, 168 S.W.3d at 356. By contrast, without challenging Rodriguez's malpractice history, Soliz argues that establishing and maintaining within a specific range of PLIC is a part of credentialing and is indicative of a

9

physician's qualifications. Thus, Bays opined that the Hospital's failure to properly establish and maintain higher PLIC requirements caused Soliz's injuries by allowing Rodriguez, a doctor with allegedly low PLIC—even though she had higher PLIC than what the Hospital required—to treat Soliz instead of a hypothetically more qualified doctor with a higher PLIC. Soliz has not cited, and we cannot find, any other cases where the plaintiff has made this kind of negligent credentialing claim.

With that in mind, we look at Bays's opinion to determine if it contained a fair summary of the basis of his opinion concerning the statutory element of causation. *See Potts*, 392 S.W.3d at 630. Bays's expert opinion focused largely on the standard of care in establishing PLIC requirements and how the hospital breached those standards. However, in a single paragraph, Bays's report tersely addressed causation: "In my opinion, it is reasonable to conclude that [the Hospital's] failure to properly credential Dr. Rodriguez probably contributed to sub-standard care being provided to [Soliz] by facilitating Dr. Rodriguez's provision of care and treatment to [Soliz] in place of a competent[,] better credentialed OB-GYN." While Bays's opinion does address causation, it does not "adequately explain[] the basis for his conclusion and link[] that conclusion to the facts." *Bakhtari*, 317 S.W.3d at 499.

Bays's report asserts that Soliz received sub-standard care because of the Hospital's low PLIC requirements; however, Bays's report fails to elaborate on how the outcome would have changed if the Hospital would have acted more reasonably in establishing and maintaining its PLIC requirements. Bays's opinion assumes that setting a higher and more "reasonable" PLIC requirement would have led to Soliz being treated by a more qualified doctor than Rodriguez; however, this conclusion is speculative in

10

multiple ways. It assumes that Rodriguez could not simply purchase a higher PLIC to remain with the Hospital. It also assumes that there are plenty of "better-credentialed" doctors that would take Rodriguez's place if the Hospital required a higher PLIC. We also note that Bays's report does not specify what a reasonable PLIC requirement would have been for the Hospital and how long ago the Hospital would have needed to change its PLIC requirements to have prevented Soliz's injuries. The report mentions national averages concerning settlement costs in similar cases and it mentions general principles to follow in setting PLIC requirements, but Bays does not specify what amount of PLIC reasonable hospitals require. Courts "should not have to fill in missing gaps in a report by drawing inferences or resorting to guess work" to determine if an expert report meets the necessary requirements. *Tiscareno*, 495 S.W.3d at 919; *see Methodist Hosp. v. Shepherd-Sherman*, 296 S.W.3d 193, 199 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that expert reports cannot be based on speculation). Thus, we conclude that the trial court could have reasonably concluded that the report did not constitute a good-faith effort to comply with the definition of an expert report. *See Tiscareno*, 495 S.W.3d at 919. Accordingly, the trial court did not abuse its discretion in sustaining the Hospital's objections to the expert report. We overrule Soliz's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Delivered and filed the
5th day of March, 2020.