Opinion by: Patricia O. Alvarez, Justice
Appellee Jake Fipps developed an anastomotic leak after his gastric bypass surgery. Fipps and his wife (Appellees) sued Appellant Charles Schwartz III, D.O., the bariatric surgeon, alleging that the "surgical procedure failed." Dr. Schwartz challenged Appellees' initial and supplemental expert reports, and the trial court dismissed the suit for an inadequate report. In Appellees' motion for new trial, they argued the supplemental report showed their theory of the case had changed to a postoperative-care complaint, and their expert was qualified to opine. The trial court granted the motion for new trial, denied Dr. Schwartz's motion to dismiss, and Dr. Schwartz appeals.
Because the only claim in Appellees' live pleading was the failed surgical procedure, and the expert reports opined on postoperative care-not the standard of care, breach, or causation for gastric bypass surgery-we reverse the trial court's order. We grant Dr. Schwartz's motion to dismiss, render judgment that Appellees take nothing, dismiss Appellees' claim with prejudice, and remand this cause to the trial court for an award of Dr. Schwartz's reasonable attorney's fees and court costs.
BACKGROUND
A. Surgery and Complaints
Dr. Schwartz performed laparoscopic Roux-en-Y gastric bypass surgery on Jake Fipps in Doctor's Hospital of Laredo, in Laredo, Texas on October 10, 2013. Fipps was discharged two days later, but he experienced abdominal pain and other symptoms. Fipps sought treatment from Dr. Schwartz, but because Dr. Schwartz was out of town, Fipps was seen by Dr. Luis Reyes.
B. Postoperative Treatment
Dr. Reyes admitted Fipps to McAllen Heart Hospital on October 16, 2013, where Fipps was found to have sepsis, intra-abdominal infection with peritonitis in the left upper quadrant, and intra-abdominal abscess due to gastric anastomotic leak. The next day, Dr. Reyes performed laparoscopic lysis of adhesions, laparoscopic drainage of left upper quadrant abscess, revision of the jejunojejunostomy, and repair of a gastric leak and stent placement in the esophagogastric area.
C. Lawsuit, Expert Reports, Case Dismissed
On December 17, 2015, Appellees sued *552 Doctor's Hospital of Laredo[1] and Dr. Schwartz for medical malpractice. They alleged that "[t]he surgical procedure failed, causing harm to Jake Fipps, and this was due to the negligence of the Defendants ... [and this] negligence was a proximate cause of injuries and damages to the Plaintiff, Jake Fipps." Appellees filed their "Initial Expert Report" of Dr. William F. Larkin, and Dr. Schwartz objected to it. Dr. Schwartz argued that Dr. Larkin was not qualified to opine on bariatric surgery, and the report failed to give a fair summary of the standard of care for gastric bypass surgery, the alleged breach, or causation. The trial court granted Appellees a thirty-day extension of time to amend Dr. Larkin's report. Dr. Larkin filed a Supplemental Report, and Dr. Schwartz filed supplemental objections to the sufficiency of the reports and moved to dismiss the case based on defective expert reports. See TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2017). The trial court sustained Dr. Schwartz's objections to the expert reports and granted the motion to dismiss.
D. Motion for New Trial Granted, Interlocutory Appeal
Appellees filed a motion for new trial. In their motion, Appellees stated that with Dr. Larkin's supplemental report, they had "changed their theory of the case, and are now staking their claims on the medical emergency that arose after the surgery, ... [and] Dr. Larkin's reports are competent evidence on the [standard for] post-operative care and ... Dr. Schwartz's alleged negligence." Dr. Schwartz responded that the supplemental "report does not adequately address standard of care or causation" for gastric bypass surgery, "simply makes conclusory accusations" pertaining to the alleged breaches of the standard of care, and fails to show Dr. Larkin is "qualified to be an expert in this case."
The trial court granted Appellees' motion for new trial and denied Dr. Schwartz's motion to dismiss. Dr. Schwartz filed a notice of interlocutory appeal. He complains that the trial court erred in denying his motion to dismiss based on the alleged inadequacy of the expert reports. See id. § 74.351(b), (l), (r)(6).
STANDARD OF REVIEW
We review a trial court's ruling on a motion to dismiss-that challenges the adequacy of an expert report-for an abuse of discretion. Bowie Mem'l Hosp. v. Wright , 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios , 46 S.W.3d 873, 877 (Tex. 2001). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." Walker v. Packer , 827 S.W.2d 833, 840 (Tex. 1992) ; accord In re Jorden , 249 S.W.3d 416, 424 (Tex. 2008) (orig. proceeding).
APPLICABLE LAW
An expert report must fulfill two purposes: it must (1) "inform the defendant of the specific conduct the plaintiff has called into question," and (2) "provide a basis for the trial court to conclude that the claims have merit." Palacios , 46 S.W.3d at 879 ; accord Jernigan v. Langley , 195 S.W.3d 91, 93 (Tex. 2006). "[T]he report must include the required information within its four corners." Wright , 79 S.W.3d at 53 ; accord *553 Palacios , 46 S.W.3d at 878.[2] "[O]missions may not be supplied by inference." Scoresby v. Santillan , 346 S.W.3d 546, 556 (Tex. 2011).
"It is not sufficient for an expert to simply state that he or she knows the standard of care and concludes it was [or was not] met." Palacios , 46 S.W.3d at 880 (alteration in original). The expert report must state the standard of care: "Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." Id. "Mere reference to general concepts regarding assessment, monitoring, and interventions are insufficient as a matter of law." Regent Health Care Ctr. of El Paso, L.P. v. Wallace , 271 S.W.3d 434, 441 (Tex. App.-El Paso 2008, no pet.) (citing Palacios , 46 S.W.3d at 879 ).
If a physician challenges the expert report as inadequate, "[the] court shall grant [the] motion ... only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l) ; accord Certified EMS, Inc. v. Potts , 392 S.W.3d 625, 630 (Tex. 2013).
Under section 74.351(r)(6), an expert's report "must include the expert's opinion on each of the elements identified in the statute," including the standard of care. Palacios , 46 S.W.3d at 878 ; see TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) ; Wright , 79 S.W.3d at 52. An expert report that omits the standard of care applicable to the claimed error "cannot constitute a good faith effort to meet the statutory requirements."See Jernigan , 195 S.W.3d at 94 (citing Palacios, 46 S.W.3d at 879 ). If the expert report does not constitute a good faith effort, and the deadline to file a compliant report has passed, the trial court has no discretion except to grant the motion challenging the report and dismiss the claim with prejudice. See ids="11094124,11094165" index="18" url="https://cite.case.law/sw3d/46/873/">id. ; Palacios , 46 S.W.3d at 880 ; see also TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).
EXPERT REPORTS INADEQUATE
In his first and third issues, Dr. Schwartz makes related arguments that we consider together. Dr. Schwartz argues that Dr. Larkin's reports are insufficient as a matter of law because they do not meet Palacios 's two-part test. See Palacios, 46 S.W.3d at 879. Dr. Schwartz argues the reports do not state the standard of care for gastric bypass surgery ; instead, they opine on postoperative care, but postoperative care opinions fail to address the standard of care for gastric bypass surgery-the only claim in Appellees' live pleading. See ids="11094124,11094165" index="21" url="https://cite.case.law/sw3d/46/873/">id. ; Jones v. Scott , No. 07-04-0077-CV, 2011 WL 5007967, at *6 (Tex. App.-Amarillo Oct. 20, 2011, no pet.) (mem. op.).
A. Appellees' Live Pleading
Appellees' First Amended Petition-their live pleading-alleges the following:
12. The surgical procedure failed, causing harm to Jake Fipps, and this was due to the negligence of ... Charles Schwartz, III, D.O.
13. This negligence was a proximate cause of injuries and damages to the Plaintiff, Jake Fipps.
14. Defendant Schwartz, in the course of rendering medical care and *554 treatment to the Plaintiff, Jake Fipps, committed acts and/or omissions which constitute negligence, as that term is defined by law.
15. Defendant Schwartz did not exercise the care, skill, and diligence ordinarily used by the average physician in the same field of practice, acting in the same or similar circumstances. Each and all of the acts and omissions of Defendant Schwartz, among others, were singularly and/or cumulatively a proximate cause of the injuries and damages incurred by the Plaintiff, Jake Fipps, and his wife, Miriam.
A plaintiff's petition must give the defendant "fair notice" of any claims against the defendant. First United Pentecostal Church of Beaumont v. Parker , 514 S.W.3d 214, 224 (Tex. 2017) (citing Horizon/CMS Healthcare Corp. v. Auld , 34 S.W.3d 887, 896 (Tex. 2000) ). "A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." Horizon/CMS Healthcare Corp. , 34 S.W.3d at 897 (emphasis added) (quoting Roark v. Allen , 633 S.W.2d 804, 810 (Tex. 1982) ).
By its plain language, Appellees' live pleading does not allege that Dr. Schwartz breached the standard of pre- or postoperative care; it merely states that "[t]he surgical procedure failed." Contra Horizon/CMS Healthcare Corp. , 34 S.W.3d at 897. Construing Appellees' pleading liberally, we nevertheless conclude Appellees' only claim was that Dr. Schwartz breached the standard of care for the gastric bypass surgery. See ids="11167621" index="28" url="https://cite.case.law/sw3d/34/887/#p896">id. ; see also First United Pentecostal Church of Beaumont , 514 S.W.3d at 224-25.
B. Requirements of Expert Report
Given a single claim for a failed surgical procedure, the expert reports were required to provide sufficiently specific information on the standard of care for the gastric bypass surgery (1) to inform Dr. Schwartz of what he should have done and (2) to enable the trial court to determine whether Appellees' claim has merit. See Jernigan , 195 S.W.3d at 93 (quoting Palacios , 46 S.W.3d at 875 ); see also TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) ; Palacios , 46 S.W.3d at 878.
C. Initial, Supplemental Expert Reports
Dr. Larkin's Initial Expert Report states that the gastric bypass surgery took place on October 10, 2013, and from October 10th to October 17th, "Fipps['s surgical site] was leaking uncontrollably, and this in reasonable medical certainty caused [Fipps's injuries]." The report continues:
It is my opinion based upon reasonable medical certainty that Charles Schwartz, III, D.O. failed to observe the standard of care expected of a surgeon in Texas, in the following respects:
a. Failing to timely diagnose[ ] the anastomotic leak in the location of his surgery;
b. Failing to recognize that there was a medical emergency that presented an immediate risk of harm, even death, to the patient;
c. Failing to timely submit the patient to immediate surgery to correct the leakage;
d. The above failures were a proximate cause of harm to the patient, sepsis, and the subsequent complications, including hypertension, sleep apnea, chronic lower back pain and depression.
*555 The Initial Expert Report also states the following:
On 10/11/13, a preliminary fluoroscopic evaluation (UGI w/KUB) demonstrates post surgical changes in the epigastrium. Subsequently a gastrographen swallow demonstrated a normal swallowing mechanism, normal esophagus and normal EG junction with no herniations. The patient is post gastrojejunal anastomosis with normal transit into the jejunum and no evidence of obstruction or leakage , but there was some intraesophageal reflux. Dr. Schwartz was notified of these findings, and discharged [Fipps] on 10/12/13. (emphasis added).
The Supplemental Report opines in part as follows:
My opinions are based upon the standard of care after the laparoscopic gastric bypass (RYGB) procedure performed on October 10, 2013, by Dr. Schwartz. A surgeon who performs laparoscopic will have specialized knowledge of bariatric medical procedures. However, there are also principles of general surgery which apply to the bariatric surgery. My opinions related to well-known and accepted principles of general surgery, as I set out below.
Restated, a bariatric surgeon is expected to have knowledge of principles of general surgery, i.e., medical practices that apply to all surgeries, in addition to bariatric surgeries. As a board certified general surgeon, and a retired professor of surgery at a medical school, I am very familiar with those principles of general surgery, and how they relate to this case.
From a review of the charts and the patient's history, Dr. Schwartz was put on notice that the patient was having complications from the surgery, e.g., abdominal pain, heartburn, nausea, vomiting and swelling problems....
....
Looking at the post-surgical care, I am able to discern deviations from the standard of care that would be expected of general surgeons, and this standard of care applies to the Fipps case. It is my opinion that Dr. Schwartz deviated from the standard of care expected of a general surgeon who practices bariatric surgery.
D. No Statement of Applicable Standard of Care
The only claim in Appellees' live pleading was for harm caused by an allegedly failed gastric bypass surgery. Appellees' expert reports were required to state, inter alia, the standard of care for laparoscopic gastric bypass surgery. See Jernigan , 195 S.W.3d at 93 ; Palacios , 46 S.W.3d at 879. Assuming without deciding that Dr. Larkin was qualified to opine on Fipps's case, Dr. Larkin's reports were inadequate as a matter of law in at least two ways.
1. No Standard of Care for Gastric Bypass Surgery
First, the reports fail to state the applicable standard of care for gastric bypass surgery. Cf. Scoresby , 346 S.W.3d at 551 (reciting the standard of care from an expert report for a particular surgery: "the applicable standard of care would have been to perform the procedure of a calvaria bone transplant without nicking or lacerating the parietal cortex [and] to get the appropriate surgeon, such as a neurosurgeon, instead of an ENT physician to do a calvaria bone grafting procedure"); Barber v. Dean , 303 S.W.3d 819, 827 (Tex. App.-Fort Worth 2009, no pet.) (reciting excerpts of a report's standard of care for cardiac surgical procedures); Baylor Coll. of Med. v. Pokluda , 283 S.W.3d 110, 121 (Tex. App.-Houston [14th Dist.] 2009, no pet.) (reciting excerpts of a report's standard *556 of care for total knee arthroplasty ). Unlike the reports in Scoresby , Barber , and Pokluda , Dr. Larkin's reports do not identify any standard of care for the surgery itself. Cf. Scoresby , 346 S.W.3d at 551 ; Barber , 303 S.W.3d at 827 ; Pokluda , 283 S.W.3d at 121.
Instead, Dr. Larkin's reports make the following statements:
• [Dr. Schwartz] failed to observe the standard of care expected of a surgeon in Texas....
• I am very familiar with those principles of general surgery, and how they relate to this case.
• I am able to discern deviations from the standard of care that would be expected of general surgeons....
• It is my opinion that Dr. Schwartz deviated from the standard of care expected of a general surgeon who practices bariatric surgery.
These conclusory statements are insufficient to state the applicable standard of care. See Scoresby , 346 S.W.3d at 557 (noting that the expert report "did not state the standard of care but only implied that it was inconsistent with the Physicians' conduct"); Palacios , 46 S.W.3d at 880 ("It is not sufficient for an expert to simply state that he or she knows the standard of care and concludes it was [or was not] met." (alteration in original) ). "Identifying the standard of care is critical," Palacios , 46 S.W.3d at 880, but Dr. Larkin's conclusory statements failed to do so.
2. Postoperative Standard of Care is Inapplicable
Second, the reports' opinions on postoperative care do not establish the standard of care for a gastric bypass surgical procedure. In his supplemental report, Dr. Larkin expressly states that his "opinions are based upon the standard of care after the laparoscopic gastric bypass (RYGB) procedure." He alleges that Dr. Schwartz breached the postoperative standard of care in three ways: failing to timely diagnose the leak, failing to recognize a medical emergency, and failing to timely initiate surgical intervention. But these alleged breaches pertain to postoperative care, and we cannot infer from them the standard of care for a gastric bypass surgical procedure. See Scoresby , 346 S.W.3d at 556 ; Wright , 79 S.W.3d at 53.
E. Reports Inadequate
The expert reports failed to state the standard of care for laparoscopic gastric bypass surgery. Contra TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) ; Palacios , 46 S.W.3d at 878-79. Dr. Larkin's reports opined on Fipps's postoperative care, but the reports did not give a fair summary of, inter alia, the standard of care for gastric bypass surgery. See Palacios , 46 S.W.3d at 880 ("Identifying the standard of care is critical...."). Thus, we necessarily conclude that Dr. Larkin's reports were inadequate as a matter of law. See TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) ; Scoresby , 346 S.W.3d at 556 ; Palacios , 46 S.W.3d at 879.
F. Trial Court Abused its Discretion
Given that the expert reports were inadequate as a matter of law, the trial court was required to grant Dr. Schwartz's motion to dismiss. See TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l) ; Jernigan , 195 S.W.3d at 93 ; Palacios, 46 S.W.3d at 880. The trial court had no discretion but to dismiss Appellees' claim with prejudice. See TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) ; Jelinek v. Casas , 328 S.W.3d 526, 540 (Tex. 2010) ; Palacios , 46 S.W.3d at 880.
We sustain Dr. Schwartz's first and *557 third issues.[3]
CONCLUSION
Dr. Larkin's reports failed to give a fair summary of, inter alia, the standard of care for laparoscopic Roux-en-Y gastric bypass surgery. Thus, the reports were inadequate as a matter of law, and the trial court had no discretion but to dismiss Appellees' claim with prejudice and award Dr. Schwartz reasonable attorney's fees and costs of court. See TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) ; Jelinek , 328 S.W.3d at 541 ; Palacios, 46 S.W.3d at 880.
We reverse the trial court's order denying Dr. Schwartz's motion to dismiss. We render judgment that Appellees take nothing from Dr. Schwartz, and we dismiss Appellees' claim with prejudice. We remand this cause to the trial court for the limited purpose of awarding Dr. Schwartz his reasonable attorney's fees and costs of court consistent with this opinion. See TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) ; Jelinek , 328 S.W.3d at 541.

Doctor's Hospital of Laredo, Inc. is not a party in this appeal.

Wright and Palacios addressed the expert report requirements of former article 4590i, see Wright , 79 S.W.3d at 53 ; Palacios , 46 S.W.3d at 878, but the Medical Liability Act of 2003 that repealed former article 4590i retained the definition for an expert report, Scoresby v. Santillan , 346 S.W.3d 546, 553 (Tex. 2011).

In his second issue, Dr. Schwartz argues that Dr. Larkin was not qualified to opine on the standard of care for laparoscopic gastric bypass surgery because Dr. Larkin was not a bariatric surgeon and he gave no evidence of laparoscopic expertise or current surgical practice. Because we have already concluded that the trial court had no discretion but to dismiss Appellees' claim based on inadequate expert reports, we need not address Dr. Schwartz's second issue. See Tex. R. App. P. 47.1.