**Opinion filed November 3, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00124-CV

_____

## DR. ROBERT L. HOGUE, M.D. AND BROWNWOOD REGIONAL MEDICAL CENTER, Appellants

## V.

## BRANDON STEWARD AND COURTNEY STEWARD, Appellees

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV2007303**

### M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the denial of two motions to dismiss filed by Dr. Robert L. Hogue and Brownwood Regional Medical Center (BRMC). Dr. Hogue alleged in his motion to dismiss that Appellees did not timely serve him with an expert report as required by Section 74.351. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2017). BRMC alleged in its motion to dismiss that

Appellees did not serve BRMC with a sufficient expert report. *See id.* We affirm in part, reverse in part, and remand this cause for further proceedings.

*Background Facts*

On July 20, 2018, Appellee Brandon Steward (Steward) presented at BRMC for a scheduled tonsillectomy to be performed by Dr. Hogue. Appellees allege that prior to surgery, Steward noticed that "Dr. Hogue had a black eye, busted hands, and appeared shaky." Appellees further allege that Dr. Hogue told Steward that he had been in a car accident "a few days prior" but was still able to perform his surgery. Ultimately, Dr. Hogue performed the tonsillectomy and sent Steward home.

Following his initial surgery, Steward returned to BRMC multiple times after experiencing various complications.[1] On August 3, 2018, EMS transported Steward to BRMC where Dr. Hogue again attempted to operate on Steward in order to alleviate the complications Steward was experiencing. Over the next two days, Dr. Hogue performed two additional surgeries on Steward to alleviate the ongoing complications. After the third surgery, Dr. Hogue decided to transfer Steward to a larger hospital for a higher level of care.

Steward filed his original petition on July 14, 2020.[2] He alleged that after the initial tonsillectomy, and his three subsequent surgeries, he has experienced many different complications. Steward alleged theories of medical malpractice and gross negligence against Dr. Hogue and BRMC.

Dr. Hogue filed his original answer to Steward's petition on August 28, 2020. Thus, Steward had 120 days from August 28, 2020, to serve Dr. Hogue with his expert report. *See id.* § 74.351(a). On December 29, 2020, after Appellees' 120-day deadline to serve their expert report had expired on the previous day, Dr. Hogue

___

[1]Steward's complications included difficulty breathing, excessive bleeding, and blood loss.

[2] Courtney Steward was added as a plaintiff in Appellees' second amended petition.

filed his motion to dismiss. In his motion to dismiss, Dr. Hogue asserted that he did not receive Appellees' expert report within the statutory deadline. Appellees responded to Dr. Hogue's motion to dismiss by asserting that they did timely serve their expert report or, in the alternative, that the COVID-19 pandemic prevented them from timely serving their expert report.

On January 15, 2021, BRMC filed its motion to dismiss. In its motion to dismiss, BRMC asserted that Appellees' expert report did not constitute a good faith effort to comply with the statutory requirements. The trial court denied both Dr. Hogue's and BRMC's motions to dismiss.

*Analysis*

*Dr. Hogue's Appeal - Timeliness of Appellees' Expert Report*

In his sole issue on appeal, Dr. Hogue contends that the trial court erred in denying his motion to dismiss because the record reflects that he was not timely served with Appellees' expert report. As set out below, we conclude that Appellees did not timely serve Dr. Hogue with their expert report. However, because the trial court had discretion to grant Appellees' request for an extension under an emergency order issued by the Texas Supreme Court, the trial court did not abuse its discretion when it implicitly did so.

We review the denial of a motion to dismiss a health care liability claim for abuse of discretion. *Ajao v. Hall*, No. 14-21-00123-CV, 2022 WL 3037550, at *3 (Tex. App.—Houston [14th Dist.] Aug. 2, 2022, no pet.) (citing *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010)). The court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). As we noted in *Kendrick v. Garcia*:

> When reviewing matters committed to a trial court's discretion, an appellate court may not substitute its own judgment for the trial

3

court's judgment. Nor may a reviewing court set aside the trial court's determination unless it is clear from the record that the trial court could only reach one decision. On the other hand, our review of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no "discretion" in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion.

*Kendrick v. Garcia*, 171 S.W.3d 698, 703 (Tex. App.—Eastland 2005, pet. denied) (internal citations omitted) (citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992)).

We note at the outset that we do not have any findings by the trial court regarding whether it determined that Appellees timely served their export report on Dr. Hogue. The trial court conducted a hearing on Dr. Hogue's motion to dismiss, but it did not receive any sworn testimony at the hearing. The hearing concluded with the trial court taking the motions to dismiss under advisement. The order denying Dr. Hogue's motion to dismiss does not state the basis for the trial court's ruling. In the absence of findings of fact or conclusions of law, a trial court's decision on a motion to dismiss a health care liability claim will be upheld on any theory supported by the record, and any necessary findings of fact will be implied. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)).

The Texas Medical Liability Act (the TMLA) requires health care liability claimants to serve an expert report upon each defendant within 120 days after the defendant files an answer. CIV. PRAC. & REM. § 74.351(a). "The issue of timeliness is a threshold issue in the expert report framework[.]" *Rosemond*, 331 S.W.3d at 767. We held in *Kendrick* that "serve" as used in Section 74.351(a) is synonymous with service under Rule 21a of the Texas Rules of Civil Procedure. 171 S.W.3d at

703. Rule 21a provides that service may be accomplished in the following ways: (1) through an electronic filing manager if the opposing party's attorney's e-mail is on file with the electronic filing manager; (2) in person; (3) by mail; (4) by commercial delivery service; (5) by fax; (6) by e-mail; or (7) by any other means that the court may direct. TEX. R. CIV. P. 21a(a).

In response to Dr. Hogue's assertion that he was not timely served with Appellees' expert report, Appellees contend that they provided prima facie evidence of service, thus creating a rebuttable presumption of timely service. If there is a question about whether proper service occurred, "[a] certificate by a party or attorney of record, or the return of the officer, or the affidavit of any other person showing service of a notice shall be prima facie evidence of the fact of service." TEX. R. CIV. P. 21a(e); *see also Mathis v. Lockwood*, 166 S.W.3d 743, 746 (Tex. 2005). Such prima facie evidence establishes a presumption of service. *Mathis*, 166 S.W.3d at 746; *see also In re E.A.*, 287 S.W.3d 1, 5 (Tex. 2009). "The presumption of service under Rule 21a 'is not "evidence" and it vanishes when opposing evidence is introduced that [a document] was not received.'" *In re E.A.*, 287 S.W.3d at 5 (quoting *Cliff v. Huggins*, 724 S.W.2d 788, 780 (Tex. 1987)).

Appellees' evidence of service consists of the certificate of service in Appellees' second amended original petition, an affidavit from Anabel Govea (Appellees' counsel's paralegal), an affidavit from Mario A. Rodriguez (Appellees' counsel), and an "eFiling" printout for Appellees' Second Amended Petition. We first note that the eFiling printout only indicates that Appellees' second amended petition, along with Appellees' expert report and the curriculum vitae of their expert, were filed on December 16, 2020. It does not contain any information that the documents were served on Dr. Hogue's counsel in the form of a "notification of service." As we held in *Kendrick*, filing an expert report with the trial court clerk does not constitute service of the report as required by Section 74.351(a). 171

5

S.W.3d at 700–04; *see Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 455–56 (Tex. App.—Austin 2006, no pet.).

The certificate of service in Appellees' second amended petition states as follows:

> I hereby certify that on the 16th day of December, 2020, a true and correct copy of this document has been served via facsimile transmission, electronic mail and/or U S. mail service, in accordance with Tex. R. Civ. P. 21 and 21a, upon the following counsel of record: . . . [signed by Appellees' counsel].

However, the Govea affidavit states:

> On December 16, 2020, I filed the Expert Report and CV that are in question in the cause, with the District Court of Brown County.
>
> At that time[,] I requested, as is customary, that the Brown [sic] District Clerk issue service upon all parties of record. As I was home under quarantine, I failed to send the reports under separate cover to counsel for Defendant Hogue, as I had already requested such of the District clerk.

The Rodriguez affidavit states that:

> Mrs. Govea, while under quarantine, attempted to manage her filings from her residence. Although she was able to timely file the necessary records with the District Court and timely submitted the documents for electronic filing to each party with the District Clerk, she did not send under separate cover the report to counsel for Defendant Hogue.
>
> . . . .
>
> On December 16, 2020, as evidence that Mrs. Govea had in fact timely filed the required report and CV, I was served with an electronic filing from the Brown County District Clerk Electronic filing system which included a link to the "filed stamped" copies of the Expert Report and CV which is currently under scrutiny.

Appellees contend that these affidavits provide prima facie evidence that they completed service of Dr. Baker's expert report on Dr. Hogue. We disagree.

We first note that the affidavits contradict the methods of service indicated in the certificate of service of Appellees' second amended petition because the affidavits do not establish that Appellees served the expert report and curriculum vitae attached to the petition by facsimile transmission, electronic mail, or U.S. mail service. Second, the affidavits reference a manner of service that is not recognized by Rule 21a—requesting the trial court clerk to issue service on the other parties. *See Kendrick*, 171 S.W.3d at 704 (only methods of service authorized under Rule 21a will suffice for purposes of service under Section 74.351(a)). Third, the affidavits establish that Appellees did not send the expert report "under separate cover" to Dr. Hogue. Thus, both of Appellees' affidavits are insufficient to create a presumption of service because they only establish that the expert report was *filed* with the Brown County District Clerk and not actually *served* on Dr. Hogue. Therefore, we conclude that Appellees have not established that the expert report and curriculum vitae were timely served on Dr. Hogue.

Alternatively, Appellees assert that we should affirm the trial court's denial of Dr. Hogue's motion to dismiss because the trial court implicitly extended the deadline to serve the expert report and curriculum vitae under the authority of the Texas Supreme Court's Twenty-Ninth Emergency Order Regarding the COVID-19 State of Disaster. In relevant portion, the Twenty-Ninth Emergency Order provided as follows:

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent . . . modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than February 1, 2021.

*Twenty-Ninth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 863 (Tex. 2020).

In general, emergency orders from the Texas Supreme Court are not self-executing. *Carrigan v. Edwards*, No. 13-20-00093 CV, 2020 WL 6504418, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 5, 2020, pet. denied) (mem. op.). We are to interpret emergency orders according to the plain meaning of the terms the order uses. *Kim v. Ramos*, 632 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (interpreting the Texas Supreme Court's Twenty-Ninth Emergency Order). A claimant seeking relief under an emergency order must allege facts that support that the delay in meeting a deadline was due to the COVID-19 crisis. *See Ruff v. Wick Phillips Gould & Martin, LLP*, No. 11-21-00130-CV, 2021 WL 3087505, at *2 (Tex. App.—Eastland July 22, 2021, no pet.) (mem. op.) (declining to extend an appellate deadline because the appellant "failed to allege any facts in her motion to support that the reason for her delay in filing the notice of appeal was due to the COVID-19 crisis"). "[T]he fact of the pandemic, standing alone, is not a reasonable explanation for a missed appellate deadline." *Jones v. White*, No. 02-20-00198-CV, 2020 WL 5666564, at *1 (Tex. App.—Fort Worth Sept. 24, 2020, no pet.) (mem. op.).

We note that the trial court did not explicitly grant an extension under the Twenty-Ninth Emergency Order. However, the trial court's order is to be upheld on any theory "supported by the record." *Rosemond*, 331 S.W.3d at 767 (quoting *Davis*, 571 S.W.2d at 862). Dr. Hogue contends that Appellees cannot rely on the Twenty-Ninth Emergency Order because they did not file a motion seeking an extension under it. We disagree.

Appellees addressed the terms of the Twenty-Ninth Emergency Order in their first supplement to their response to Dr. Hogue's motion to dismiss. In their prayer, Appellees requested an extension of the expert report deadline under the Twenty-Ninth Emergency Order. Generally, "courts should acknowledge the substance of the relief sought despite the formal styling of the pleading." *In re J.Z.P*, 484 S.W.3d

924, 925 (Tex. 2016) (quoting *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011) (per curiam)); *see also Jurgens v. Martin*, 631 S.W.3d 385, 400 (Tex. App.—Eastland 2021, no pet.) (noting that courts look at the substance of pleas for relief rather than the title of the document). Additionally, counsel for Appellees orally requested an extension under the Twenty-Ninth Emergency Order at the hearing on the motion to dismiss.

In terms of substance, Appellees' response quotes from a portion of the Twenty-Ninth Emergency Order, and they attached a copy of the order as an exhibit. Additionally, in relevant portion, Appellees' response stated as follows:

> 7. In light of the Supreme Court Order, this Honorable Court should be made aware that when Plaintiffs filed their Expert Report and CV on December 16, 2020, the McAllen office of the Rodriguez Law Firm. P.C. was temporarily shut down due to a Covid Outbreak. The litigation paralegal assigned to this file, Mrs. Anabel Govea was under quarantine at her residence due to a Covid outbreak in her home. Mrs. Govea's daughter and husband had each tested positive with the Covid-19 virus.
>
> 8. Mrs. Govea, while under quarantine, attempted to manage her filings from her residence. Although she was able to timely file the necessary records with the District Court and timely submitted the documents for electronic filing to each party with the District Clerk, she failed to send under separate cover the report to counsel for Defendant Hogue. . . .
>
> 9. Additionally, the undersigned counsel was also under home quarantine due to his contact with his legal assistant. Counsel, while under quarantine at home, attempted to properly maintain his active trial docket and supervise his McAllen office as well as his San Antonio office. . . .
>
>      . . . .
>
> Plaintiffs ask that the Court, (1) under its authority under the 29th Order of the Texas Supreme Court, (2) the effect of Covid-19 on the Rodriguez Law Firm, and (3) the actual timely filing of the expert report DENY Defendant's Motion to Dismiss and grant Plaintiffs all relief set

out above in the foregoing paragraphs and all other relief to which Plaintiffs are justly entitled.

Also attached to Appellees' response to Dr. Hogue's motion were the Govea and Rodriguez affidavits supporting the matters set out in the response with respect to the effect of the Covid-19 crisis on serving Dr. Hogue.

Through their response and two affidavits, Appellees established that the reason they missed the 120-day deadline to serve their expert report was due to counsel, and counsel's paralegal, working from home due to possible exposure to the COVID-19 virus. Appellees' counsel's oral request for an extension under the Twenty-Ninth Emergency Order repeated these matters. Accordingly, Appellees sufficiently requested an extension under the Twenty-Ninth Emergency Order. *See Ruff*, 2021 WL 3087505, at *2.

Dr. Hogue additionally asserts that the trial court erred if it granted Appellees an extension under the Twenty-Ninth Emergency Order. To the extent that the trial court denied the motion to dismiss based upon an extension under the Twenty-Ninth Emergency Order, we review the decision for an abuse of discretion. *See Ajao*, 2022 WL 3037550 at *3. Dr. Hogue contends that Appellees should not be able to rely on any emergency authority because Dr. Baker's report was dated September 2020, and Appellees waited until December 30, 2020, to initially serve the report. We do not find this argument persuasive. As stated previously, if Appellees showed that they had a COVID-19 related reason for missing the 120-day deadline of December 28th, then it was within the trial court's discretion to grant an extension. *See Ruff*, 2021 WL 3087505, at *2. Because Appellees alleged a COVID-19 related reason for missing their deadline, we conclude that the trial court was within its discretion

to extend Appellees' expert report deadline and deny Dr. Hogue's motion.  We overrule Dr. Hogue's sole issue on appeal.[3]

*BRMC's Appeal - Sufficiency of Appellees' Expert Report*

In four issues, BRMC challenges the trial court's denial of its motion to dismiss.  We will address BRMC's first three issues together as each of them challenge the sufficiency of Dr. Baker's expert report.  Specifically, BRMC contends that Dr. Baker's report does not set forth the proper standard of care attributable to BRMC, fails to establish how BRMC breached any standard of care, and fails to state how any purported BRMC breach caused Appellees' injuries.

We review a trial court's decision to deny a motion to dismiss based on the sufficiency of an expert report for an abuse of discretion.  *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam).  In analyzing a report under this standard, we consider only the information contained within the four corners of the report.  *Id.*  We defer to the trial court's factual determinations if supported by the evidence but review its legal determinations de novo.  *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam).

The purpose of the expert report requirement is "to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims."  *Abshire*, 563 S.W.3d at 223.  An expert report must provide a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered failed to meet that standard, and the causal relationship between the failure to meet the standard of care and the injury suffered.  CIV. PRAC. & REM. § 74.351(r)(6); *Abshire*, 563 S.W.3d at 223; *Am. Transactional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (citing former version of TMLA).  However, the expert report must still set out what care was

---

[3]Dr. Hogue does not challenge the sufficiency of Dr. Baker's report as it pertains to him.

expected but not given. *Abshire*, 563 S.W.3d at 226 (citing *Palacios*, 46 S.W.3d at 880). Sections 74.351(*l*) and 74.351(r)(6) require that the expert report explain how and why the alleged negligence caused the injury in question. *Id.* at 224 (citing *Jelinek*, 328 S.W.3d at 536). The expert must explain the basis of his statements and link his conclusions to specific facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citing former version of TMLA); *see also Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 (Tex. 2017) ("[W]ithout factual explanations, the reports are nothing more than the *ipse dixit* of the experts, which . . . are clearly insufficient."). The expert report must set forth specific information about what the defendant should have done differently, and it must explain factually how proximate cause is going to be proven. *Abshire*, 563 S.W.3d at 226.

A trial court may grant a motion to dismiss regarding the adequacy of an expert report under the TMLA only if it appears that the expert report is not an objective good faith effort to comply with the statutory requirements. Civ. Prac. & Rem. § 74.351(*l*). An expert report demonstrates a "good faith effort" when it (1) informs the defendant of the specific conduct the plaintiff has called into question and (2) provides a basis for the trial court to conclude that the claims have merit. *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018). "A report that merely states the expert's conclusions about the standard of care, breach, and causation" is insufficient. *Palacios*, 46 S.W.3d at 879; *accord Abshire*, 563 S.W.3d at 223. An expert's mere conclusion that the standard of care was not met does not constitute a good faith effort to comply with the statutory requirements. *Palacios*, 46 S.W.3d at 880.

*Standard of Care*

Dr. Baker's reports consist of his initial report and two supplemental reports that were filed after BRMC filed its motion to dismiss. Dr. Baker's initial report is primarily directed at the conduct of Dr. Hogue.

In regard to BRMC's standard of care, Dr. Baker stated in his initial report that "[BRMC] and [Dr. Hogue] acting directly and by and through their agents, employees and/or servants . . . who were responsible for [Steward's] treatment and care at Brownwood Regional Medical Center violated the accepted and applicable standards of care." Dr. Baker followed this statement with six items that primarily detailed alleged deficiencies with Dr. Hogue's treatment. A hospital is generally not vicariously liable for the acts or omissions of a doctor on the hospital's medical staff. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009). Dr. Baker's initial report does not contain any statements that identify any nurse, administrator, or other employee of BRMC that allegedly did anything wrong.

Generally, "[t]he standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances." *Palacios*, 46 S.W.3d at 880 (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 366 (Tex. 1987)). It is important that an expert report state what the applicable standard of care is because a breach cannot be determined without it. *See id.* A fair summary of what the applicable standard of care is does not require directly quoting the standard quoted above. *Id.* However, it does require stating what care was expected, but not received. *Abshire*, 563 S.W.3d at 226.

Here, the standard of care stated in Dr. Baker's initial report is not a fair summary of the standard of care with respect to BRMC. Appellees assert on appeal that BRMC was negligent in "failing to maintain policies and procedures for evaluating a physician's mental and physical state." However, Dr. Baker's initial report does not set out the applicable standard of care for BRMC to evaluate the

well-being of doctors prior to surgery. As previously noted, Dr. Baker's initial expert report is directed at the conduct of Dr. Hogue. Therefore, Dr. Baker's initial report does not provide a fair summary of the standard of care to applicable BRMC. *See Palacios*, 46 S.W.3d at 880 (noting that a fair summary requires that an expert report describe the conduct it is calling into question).

*Schwartz v. Fipps* informs our analysis of the sufficiency of the standard of care listed in Dr. Baker's initial report. In *Schwartz*, the expert report stated the following regarding the applicable standard of care for a gastric bypass surgery: "[Dr. Schwartz] failed to observe the standard of care expected of a surgeon in Texas . . . ." *Schwartz v. Fipps*, 553 S.W.3d 549, 556 (Tex. App.—San Antonio 2018, no pet.). The San Antonio Court of Appeals determined that the expert report failed to state the applicable standard of care. *Id.* Dr. Baker's initial report is fundamentally the same as the one found in *Schwartz* with respect to BRMC. Like in *Schwartz*, Dr. Baker's initial report fails to elaborate on what the acceptable standards of care are that he alleges BRMC violated.

Even if we consider Dr. Baker's first and second supplemental reports alongside his initial report, they still fail to cross the threshold of a good faith attempt at an expert report with respect to the applicable standard of care. Unlike the initial expert report, the supplemental reports contain a separate section addressing the applicable standard of care for BRMC. In the two supplemental reports, Dr. Baker prefaces BRMC's standard of care as "what a reasonable healthcare provider would have done under the same and/or similar circumstances." Dr. Baker further states that the standard of care required BRMC to:

1. Credential and verify on a regular scheduled basis Dr. Robert L. Hogue, M.D.'s surgical knowledge, education, training and experience to perform tonsillectomies on adult 30 year old patients such as Brandon Steward.

2. Verify Dr. Robert L. Hogue's training, knowledge, education and experience was current and up to date in evaluating and handling postoperative complications such as experienced by Brandon Steward.

Thus, Dr. Baker did not address the standard of care for assessing a physician's fitness to perform surgery as a result of a physical injury. Instead, Dr. Baker asserted a negligent credentialing claim against BRMC.

Generally, "a negligent credentialing claim involves a specialized standard of care" and "the health care industry has developed various guidelines to govern a hospital's credentialing process." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 463 (Tex. 2008) (quoting *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 546 (Tex. 2004)). A plaintiff making a negligent credentialing claim against a hospital must show how the hospital failed to meet the specialized standard of care and how this failure proximately caused his or her injury. *See id.* "[I]n most negligent credentialing cases, the plaintiff calls into question the medical malpractice history of a doctor and alleges that the health care facility was thereby negligent in allowing such a doctor to practice medicine in their facility." *Soliz v. McAllen Hosps., L.P.*, No. 13-18-00638-CV, 2020 WL 1060572, at *5 (Tex. App.—Corpus Christi–Edinburg Mar. 5, 2020, pet. denied) (citing *Moreno v. Quintana*, 324 S.W.3d 124, 134 (Tex. App.—El Paso 2010, pet. denied); *Rose v. Garland Cmty. Hosp.*, 168 S.W.3d 352, 356 (Tex. App.—Dallas 2009, no pet.)). Additionally, a plaintiff making a negligent credentialing claim must prove that the hospital acted with actual malice. *Moreno*, 324 S.W.3d at 133–35.

Here, Dr. Baker's reports contain no discussion of the medical malpractice history or qualifications of Dr. Hogue. *See Soliz*, 2020 WL 1060572, at *5. Dr. Baker's reports also contain no reference to any guidelines that BRMC failed to follow before allowing Dr. Hogue to perform Steward's tonsillectomy. *See McAllen Med. Ctr., Inc.*, 275 S.W.3d. at 463. Additionally, Dr. Baker's reports fail to address

15

what guidelines that BRMC did not follow in credentialing Dr. Hogue to perform the follow-up surgeries on Steward. *See id.* Therefore, we conclude that Dr. Baker's report failed to sufficiently describe BRMC's standard of care regarding negligent credentialing.

Appellees contend that Dr. Baker's reports provided the correct standard of care because their claim against BRMC is not for negligent credentialing but for its lack of policies governing its medical staff. However, Dr. Baker's reports do not state that BRMC's standard of care required it to maintain policy/procedures governing medical staff. Dr. Baker's reports do not call into question any conduct of BRMC related to its policies. Thus, Dr. Baker failed to describe how BRMC should have acted differently. *See Abshire*, 563 S.W.3d at 226.

*Breach of Standard of Care*

Even if Dr. Baker sufficiently described BRMC's standard of care, other aspects of his initial report fail to meet the good faith requirement. Dr. Baker's initial report fails to provide a fair summary of BRMC's purported breach of a standard of care. Appellees contend that Dr. Baker's initial report detailed how BRMC breached its duty to Steward in the following respects:

1. Failing to assess Dr. Hogue's fitness to perform surgery given that he had been in an "apparently serious automobile accident."

2. Failing to reassess Dr. Hogue's fitness to perform additional surgeries on Steward.

3. Failing to require further evaluation by a surgical specialist in light of Steward's "worsening condition."

As we previously noted, a hospital is generally not vicariously liable for the acts or omissions of a doctor on the hospital's medical staff. *Hawley*, 284 S.W.3d at 862. By statute, medical care is only to be performed by a person that is licensed to practice medicine. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (citing

16

CIV. PRAC. & REM. § 74.001(a)(19); TEX. OCC. CODE ANN. § 151.002(a)(13) (West 2022)).

The first portion of Dr. Baker's initial report, which Appellees suggest shows that BRMC breached its standard of care, is located in the factual background of the report. At this point in the report, Dr. Baker had not yet described what BRMC's standard of care is, nor had he detailed any purported breach by BRMC. Additionally, nowhere in Dr. Baker's initial report does he allege that BRMC breached its standard of care by allowing Dr. Hogue, in spite of his alleged injuries, to operate on Steward on the day of the initial tonsillectomy.

The second and third portions of Dr. Baker's initial report, which, Appellees allege, show that BRMC breached its standard of care, both implicate the practice of medicine. *See Doctors Hosp. at Renaissance, Ltd v. Andrade*, 493 S.W.3d 545, 548 (Tex. 2016) (noting that only a person that is licensed to practice medicine can provide medical care). The second alleged breach asserts that BRMC breached its standard of care by failing to "emergently evaluate the differential diagnosis" of Steward. This assertion falls squarely into the practice of medicine. *See* OCC. § 151.002(a)(13); *see also Doctors Hosp. at Renaissance*, 493 S.W.3d at 548 (noting that only those licensed to practice medicine in the State of Texas may make a diagnosis). Dr. Baker's theory of how BRMC breached its standard of care would have required BRMC to make a medical diagnosis—which it is expressly forbidden from doing. *See Doctors Hosp. at Renaissance*, 493 S.W.3d at 548. The third alleged breach asserts that BRMC breached the standard of care by not evaluating the efficacy of Dr. Hogue's repeated surgeries on Steward and not diagnosing the potential for further harm from those repeated surgeries. Again, in order to comply with the purported standard of care, BRMC would be required to make both diagnosis and treatment decisions. Thus, standing alone, Dr. Baker's first report was not a good-faith effort to describe BRMC's breach.

17

Dr. Baker's first and second supplemental reports also fail to describe how BRMC breached its purported standard of care. In his supplemental reports, Dr. Baker states that BRMC breached its standard of care in the following ways:

1. Failure to credential and verify Dr. Robert L. Hogue, M.D.'s surgical knowledge, education, training and experience to perform tonsillectomies on adult 30 year old patients such as Brandon Steward.

2. Failure to ensure that the Credentials Committee and Surgical Department Chairman verified Dr. Robert L. Hogue's training, knowledge, education and experience in evaluating and handling postoperative complications such as experienced by Brandon Steward.

Here, Dr. Baker's report fails to either allege or show how BRMC acted with malice. In Dr. Baker's alleged breaches by BRMC of the applicable standard of care, he fails to identify in what way(s) Dr. Hogue was unqualified to perform the tonsillectomy on Steward. Such deficiency would make it impossible to objectively determine whether BRMC's act of allowing Dr. Hogue to operate presented an extreme risk to Steward. Additionally, this deficiency makes it impossible to determine whether BRMC knew of, and ignored, any potential issues with Dr. Hogue's credentials. Thus, Dr. Baker's report fails to provide a good faith summary of how BRMC was negligent in credentialing Dr. Hogue.

*Causation*

In assessing the sufficiency of the causation element of an expert report, we must consider whether the expert provided a causal link between the alleged negligent act and the plaintiff's injury. *See Mendez-Martinez v. Carmona*, 510 S.W.3d 600, 607 (Tex. App.—El Paso 2016, no pet.) (citing *Clapp v. Perez*, 394 S.W.3d 254, 258 (Tex. App.—El Paso 2012, no pet.)). We do not address in detail the matter of causation other than to note that the absence of the standard of care and the breach of the standard of care with respect to BRMC from Dr. Baker's reports

renders his references to causation with respect to BRMC inadequate. *See* CIV. PRAC. & REM. § 74.351(r)(6) (the expert report must address the "causal relationship" between the failure of the health care provider to meet the applicable standard of care as described in the report and the claimed injuries). We sustain BRMC's first three issues.

*No report at all?*

In BRMC's fourth issue, it contends that the trial court erred in denying its motion to dismiss with prejudice because Dr. Baker's initial report, and his two supplemental reports, were so deficient as to constitute no report at all. BRMC relies on *Lewis v. Funderburk* in support of this proposition. 253 S.W.3d 204, 207–08 (Tex. 2008). Essentially, BRMC seeks for us to disregard Section 74.351(c) of the Texas Civil Practices and Remedies Code and dismiss the Stewards' case with prejudice. We decline to do so.

Section 74.351(c) provides:

> If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the applicable deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

CIV. PRAC. & REM. § 74.351(c). As discussed above, even considering the initial report together with the supplemental reports, Dr. Baker's expert report is deficient. Thus, the trial court abused its discretion by denying BRMC's motion to dismiss. However, we find it important to note that this is the first time that Dr. Baker's report has been found deficient in this cause. The TMLA allows a trial court to grant one thirty-day extension to cure a deficiency in an expert report. *Id.* A trial court must grant an extension if the report's deficiencies are curable. *Zamarripa*, 526 S.W.3d at 461; *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011). While

19

Dr. Baker's reports are deficient with respect to BRMC, we cannot conclude that it would be impossible to do so. Therefore, the trial court must have an opportunity to consider an extension under the TMLA. *See Zamarripa*, 526 S.W.3d at 461. We overrule BRMC's fourth issue.

*This Court's Ruling*

We affirm the trial court's order denying Dr. Hogue's motion to dismiss. We reverse the trial court's order denying BRMC's motion to dismiss. We remand this cause to the trial court for further proceedings consistent with this opinion.

JOHN M. BAILEY
CHIEF JUSTICE

November 3, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.